IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS J. BUCKLEY, AS TRUSTEE OF THE DVI LIQUIDATING TRUST </br></br>     Plaintiff,</br></br>     v.</br></br>MICHAEL A. O'HANLON, STEVEN R. GARFINKEL, RICHARD E. MILLER, JOHN P. BOYLE, ANTHONY J. TUREK, RAYMOND D. FEAR, WILLIAM S. GOLDBERG, GERALD D. COHN, JOHN E. MCHUGH, HARRY T. J. ROBERTS, and NATHAN SHAPIRO,</br></br>     Defendants. | )</br>)</br>)</br>)</br>)  C.A. No. 04-955 (GMS)</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>) |

**MEMORANDUM**

**I.      INTRODUCTION**

The Official Committee of Unsecured Creditors of DVI, Inc. (the "Committee") filed this action on August 19, 2004. The Committee was dissolved, and Dennis J. Buckley was appointed as Trustee for the DVI Liquidating Trust ("Buckley") by order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on November 24, 2004. Buckley was substituted as plaintiff in this action in this court's Order of April 6, 2006. The complaint states claims for breach of fiduciary duty and deepening insolvency as to the officer defendants (Michael A. O'Hanlon, Steven R. Garfinkel, Richard E. Miller, John P. Boyle, Anthony J. Turek, and Raymond D. Fear) and the director defendants/audit committee members (O'Hanlon, William S. Goldberg, Gerald D. Cohn, John E. McHugh, Harry T. J. Roberts, and Nathan Shapiro). The complaint also includes a claim for fraud as to O'Hanlon, Garfinkel, and Miller. Presently before the court are eight motions to dismiss.

## II.  LEGAL STANDARD

Pursuant to the motion of a party, a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In making this determination, the court must accept as true all allegations in the complaint, and must draw all reasonable inferences in the light most favorable to the plaintiff. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). The defendant must show "beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.  BACKGROUND[1]

DVI and its subsidiaries are Delaware corporations with principal places of business in Pennsylvania. (D.I. 1, ¶ 11.)  Prior to filing for bankruptcy, DVI extended lease and loan financing to healthcare providers to facilitate the purchase of sophisticated medical equipment, and extended revolving lines of credit that were secured by liens on accounts receivable generated by that provider's operations. (D.I. 1, ¶¶ 13-15.)  To raise capital and maintain their lines of credit, DVI used a securitization system, through which financial contracts were pledged as collateral to lenders. (D.I. 1, ¶ 33.)  Recognizing losses or establishing reserves on underperforming contracts would have negatively affected the securitization system, so although the payment histories of impaired leases and loans worsened in the years leading up to filing, DVI's loss reserves and level of write-offs for bad credit remained fairly static. (D.I. 1, ¶ 39.)  By 1999, DVI began experiencing shortages of capital, so the defendants used irregular financial practices to make ends meet while at the same time investing large amounts of cash in ill-performing markets and non-core businesses. (D.I. 1, ¶ 54.)  Defendants O'Hanlon, Garfinkel, and Miller were allegedly the first to implement such practices, as they had access to DVI's

---

[1] This section is a summary of facts, taken from the pleadings, and do not constitute findings of fact.

record keeping software. Apparently, the other defendants discovered, ignored, or participated in the practices. (D.I. 1, ¶¶ 92-100.)

The plaintiff alleges that, to maintain the appearance of solvency, the defendants injured DVI and its creditors by repurchasing delinquent loans and leases without receiving commensurate value, and transferring funds within DVI's subsidiaries and among select borrowers to disguise underperforming accounts. (D.I. 1, ¶¶ 60-68.) Other irregular practices that the defendants are alleged to have committed include investing substantial amounts of money in consistently unprofitable or non-core businesses, obtaining otherwise-unavailable lines of credit by pledging the same collateral to several lenders, ignoring internal controls and reporting procedures, and disregarding numerous warnings from DVI's outside auditor and the SEC. (*Id.*) The independent auditor resigned in June 2003 after refusing to approve DVI's Form 10-Q for the quarterly period ending March 31, 2003. DVI also began defaulting on its loans in June 2003, and ultimately filed for bankruptcy on August 25, 2003. (D.I. 1, ¶ 57.)

**IV.    DISCUSSION**

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994). "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. for Women v. Scheidler*, 510 U.S. 249, 255 (1994). Therefore, the court will address the issue of standing first.

### A. Standing

Defendant Roberts posits that the causes of action pursued in the complaint are beyond the scope of the remedies contemplated by the statutory predicates cited in the Motion to Authorize Official Committee of Unsecured Creditors to Investigate and Pursue Causes of Action Against Pre-Petition Officers and Directors. In the May 10, 2004 Order approving that motion, however, the Bankruptcy Court authorized the Debtors to "investigate, and, if appropriate, pursue, *any causes of action* of the Debtors' estates against the Defendants." (D.I. 27, Ex. A) (emphasis added). Whether this Order granted to the Committee greater authority than the Committee requested is immaterial; the court had the power to do so. The plain language of the Bankruptcy Court's Order makes clear that Buckley has standing to assert claims on behalf of DVI's debtors.

Other defendants argue that Buckley cannot bring claims on behalf of the creditors because the Committee had standing as to the debtors only. In support of their argument, the defendants rely on the Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972), wherein the Court held that a trustee in bankruptcy does not have standing to pursue claims on behalf of creditors of the debtor company's estate. In response, Buckley argues that, as trustee, it is empowered to pursue claims on behalf of the debtors' creditors because the Bankruptcy Court confirmed the assignment of the creditors' claims to the trustee under the provisions of the Plan and Confirmation Order, dated November 24, 2004.

While the court acknowledges that, in theory, a bankruptcy trustee can pursue claims that the debtors' creditors assigned to it, a plaintiff must have standing to pursue its claims at the time of filing. *See Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co.*, 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the

time the suit was brought."). Here, the complaint was filed in August 2004 but the trustee did not obtain an assignment of rights from a subset of creditors until four months later, in December 2004, when the Bankruptcy Court's Plan and Confirmation Order became effective. Moreover, since that Order, Buckley has not sought to supplement the existing complaint.

The court will not proceed with claims for which the plaintiff obtained standing after the lawsuit was filed. As Judge Longobardi so aptly stated in *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

917 F. Supp. 305, 310 (D. Del. 1995) (*quoted in Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996), *as amended on rehearing*, 104 F.3d 1296 (Fed. Cir. 1996)). The court will dismiss, without prejudice, any claims Buckley asserts on behalf of the debtors' creditors.

### B. Breach of Fiduciary Duty Claim

Delaware law provides that corporate officers and directors owe the corporation a triad of fiduciary duties: loyalty, good faith, and due care. *McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000). To state a claim for breach of fiduciary duty, a plaintiff may allege that the officers and directors of a company knew or should have known that violations of the law were occurring, that they took no good faith steps to ameliorate the situation, and that the company suffered

losses as a result.[2] *In re Caremark Intern. Inc. Deriv. Lit.*, 698 A.2d 959, 971 (Del. Ch. 1996) (stating that liability may be based upon either an ill-advised or negligent decision, or an unconsidered failure to act when due attention would arguably have prevented the loss). The Court of Chancery later elaborated on what constitutes such an ill-advised decision in *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (listing as an example "that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation").

Buckley alleges that the defendants either knew or should have known that violations of law were occurring, that they took no good faith steps to ameliorate the situation, and that DVI and its creditors suffered damages. Buckley also alleges that the officer defendants perpetuated an array of irregular accounting practices, of which the director defendants were aware, and which they ignored. All of the director defendants were alleged to be members of DVI's audit committee. Buckley's complaint is consistent with the *Guttman* pleading example, in that it alleges that the officer defendants eliminated the Criticized Asset Reporting system and manipulated delinquent loans and leases to make them appear profitable. Also, as in *Guttman*, Buckley alleges that the audit committee received eleven warning letters over eight years from their independent auditor, and that the auditor resigned after no action was taken in response to the alert. Buckley further avers that a series of inquiries from the SEC were also ignored by both the audit committee and the board of directors.

Several of the defendants have attempted to analogize the facts in this case to those in *Guttman* because the Court of Chancery viewed that plaintiff's allegations as overly conclusory.

---

[2] Delaware law provides that fiduciary duties are owed to a corporation by both officers and directors. *Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996). Therefore, to the extent that cases cited in this memorandum refer only to one of these groups, the court will consider them as applicable to both.

In *Guttman*, however, the complaint made sweeping accusations regarding accounting irregularities without discussing how management was expected to be aware of the problem, or even the presence of an audit committee. Here, the court finds that the contents of Buckley's complaint dictate a different result.

The defendants also challenge Buckley's claim for breach of fiduciary duty by disputing many of the substantive contentions. For example, several state that they lacked knowledge or notice of the accounting irregularities, that they held their relevant positions for only a portion of the time in which DVI allegedly was put on notice of the irregularities, that they immediately attempted to rectify the situation upon learning of the problem, that the letters sent by DVI's outside auditor or the SEC could not be expected to alert them to the problems, or that the Examiner's Report painted a different picture of the internal workings of DVI. These responses address, however, the substantive merits of Buckley's claim. Because Buckley's allegations are accepted as true for the purposes of these motions, such factual disputes are not appropriately resolved on motions to dismiss. Rather, the court must focus its consideration on the sufficiency of the complaint.

    1.    Sufficiency of Pleading

Several of the defendants insist that, because they are not mentioned individually in many of Buckley's allegations, the claims are too broad to proceed. "When group pleading is utilized by a plaintiff 'the identification of the individual sources of statements is unnecessary when the fraud allegations arise from the misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases or other group-published information that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation.'" *Tracinda Corp. v.*

*DaimlerChrysler AG*, 197 F. Supp. 2d 42, 85 (D. Del. 2002) (citations and internal quotations omitted). Therefore, group pleading may be sufficient in some circumstances.

Defendant Roberts argues that breach of fiduciary duty claims must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Such an assertion is correct when the allegations of breach of fiduciary duty sound in fraud. *ePlus Group v. Panoramic Communications, Inc.*, No. 02-7992, 2003 WL 21512229 at *2 (S.D.N.Y. July 2, 2003). However, in the absence of such allegations, Rule 9(b) does not apply. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197 (D. Del. 2000) (stating that the heightened pleading requirement generally does not apply to state law claims for breach of fiduciary duty). In *Fruehauf*, Rule 9(b) was not triggered even in the presence of multiple allegations that the defendant knew or should have known that certain representations were false and misleading. Neither was particularized pleading required when the plaintiff's complaint included such statements as "knew or should have known the financial statements . . . misrepresented to System One the Division's financial condition." *In re InaCom Corp.*, No. 00-2426, 2001 WL 1819987 at *3 (Bankr. D. Del. Aug. 7, 2001) (finding the claim did not sound in fraud).

While not all of Buckley's allegations name the involved defendants individually, Buckley did separate the list of defendants into smaller groups who worked together on various committees and boards. Although Buckley frequently refers simply to "defendants" in the body of the complaint, the parties involved in each alleged practice of bad-faith were identified expressly in the introductory paragraphs of Buckley's complaint, and later, in his factual allegations and claims. (D.I. 1, ¶¶16-28.) The court accepts that Buckley uses the categories of officers and directors merely as substitutes for listing names, rather than using them as sweeping terms to avoid having to associate specific parties to particularized conduct. Wherein much of

the alleged conduct involved collective action and decision making, Buckley has sufficiently identified the small groups within DVI and their roles in approving or participating in each alleged bad-faith practice.

The court rejects Defendant Roberts' assertion that Buckley's allegations sound in fraud. Granted, Buckley describes much of the defendants' conduct as intentional or knowing, however, Buckley's choice of terms, which are also seen in fraud claims, do not transform claims for breach of fiduciary duty into claims based in fraud. In fact, the fiduciary duty claims in Buckley's complaint are very similar in structure to what were deemed acceptable fiduciary duty claims in *Fruehauf* and *InaCom*. Buckley's allegations for breach of fiduciary duty, while they must not be conclusory, need not be pled with the particularity required of fraud claims.

    2.    Applicability of Business Judgment Rule

The business judgment rule is a presumption that a board's actions are entitled to deference, because it would be overly harsh to condemn such a decision that only in hindsight was poorly conceived. This presumption is rebutted, however, when a plaintiff pleads particularized facts sufficient to raise a reason to doubt that the action was taken in good faith or on an informed basis. *In re The Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003). Such doubt is raised when officers and directors fail to be "active monitors of corporate performance," *Caremark*, 698 A.2d at 968 (providing as an example the replacement of a board of directors following the discovery of large losses caused by phantom trades by a prominent trader). Nor may officers and directors consciously disregard visible "red flags." *See Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 at * 13 (Del. Ch. Sept. 30, 2003). Neither may officers and directors make decisions "so egregious as to constitute corporate waste." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). The standard for holding officers and directors liable is

one of gross negligence. *Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985).

In *Smith*, the decision to approve a proposed merger met that standard because it was made solely on the basis of a twenty-minute presentation. On the other end of the spectrum, gross negligence was not found when directors recommended a merger after consulting financial advisors, meeting several times over a six-week period, and reviewing challenges to the idea. *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 970 (Del. Ch. 1986) (defining gross negligence as reckless indifference to, or a deliberate disregard of, the stockholders).

Buckley used language similar to that in the above cases in describing defendants' alleged conduct and its results, including allegations of wasting corporate assets, willfully disregarding warnings, and ceasing to review delinquent accounts. Buckley alleges that DVI's officers and directors acted in bad faith, disguising poorly-performing accounts and ignoring the advice of its outside auditor and the inquiries of the SEC. Buckley has satisfied the *Disney* requirement by pleading particularized facts that raise doubts as to whether the officers and directors were acting in good faith.

3. Effect of Exculpatory Clause

Several defendants argue that the exculpatory clause in DVI's Certificate of Incorporation, which is based on section 102(b)(7) of the Delaware General Corporation Law, bars the claims against them because it states that no director shall be personally liable to DVI or its stockholders. However, the clause contains exceptions to this protection when a director breaches his duty of loyalty to DVI, or for acts not taken in good faith, involving intentional misconduct, or a knowing violation of law. For example, in *Official Committee of Unsecured Creditors of Integrated Health Serv., Inc. v. Elkins*, such a provision was found not to insulate the directors from liability when they acted with knowing and deliberate indifference by

approving a loan program without consideration, deliberation, or advice from an expert. No. 20228, 2004 WL 1949290 at *15 (Del. Ch. Aug. 24, 2004). Similarly in *McCall v. Scott*, defendants were not protected by the exculpatory clause when they acted in bad faith by intentionally ignoring "red flags." 250 F.3d 997, 1001 (6th Cir. 2001) (finding allegations of "conscious disregard of known risks" to necessarily be conduct undertaken in bad faith).

Buckley's allegations fall into the "bad faith" exception to DVI's Certificate of Incorporation exculpatory clause. Buckley alleges that the defendants here, as was alleged in *Elkins*, acted with "knowing and deliberate indifference," when they stopped examining delinquent accounts. Further, Buckley alleges that the defendants consciously disregarded "red flags," as in *McCall,* when the defendants paid no attention to the warnings allegedly contained in the auditor's and SEC's letters. Buckley has sufficiently pled breach of the duties of loyalty and good faith. As a result, the Certificate of Incorporation cannot operate to insulate the defendants from a breach of fiduciary duty claim. Consequently, the claim will proceed on the merits.

    **C.**    **Deepening Insolvency Claim**

To plead insolvency, a plaintiff must aver facts that establish, for pleading purposes, that the corporation had a deficiency of assets below liabilities with no reasonable prospect that the business will succeed, or that it was unable to meet maturing obligations as they fell due in the ordinary course of business. *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004).

Buckley alleges that financial practices similar to those employed by the debtors in *Production Resources* occurred at DVI. *Id.* at 783-4. Specifically, the complaint avers that DVI had great difficulty raising capital, shuffled delinquent accounts to make them appear healthy,

and could only obtain advances from its line of credit by erroneously certifying impaired loans and leases. Buckley expressly alleged that DVI became insolvent in June 2003, when it began defaulting on its loan obligations. Again, here, as in *Production Resources*, it can be reasonably inferred that the officers' and directors' alleged conduct caused the insolvency. The court thus concludes that Buckley has sufficiently pled that DVI was in the "zone of insolvency."

        1.        Recognition of Deepening Insolvency Claim

The U. S. Bankruptcy Court for the District of Delaware predicted that, in the absence of an opinion by the Delaware Supreme Court and given the Third Circuit's analysis in *Official Committee of Unsecured Creditors v. R. F. Lafferty & Co.*, Delaware law would likely recognize a claim for deepening insolvency. *In re Oakwood Homes Corp.*, 340 B.R. 510, 531 (Bankr. D. Del. 2006). Although the elements of such a claim have yet to be enunciated, the Third Circuit acknowledged such a claim when a plaintiff alleges "fraudulent expansion of corporate debt and prolongation of corporate life." *Official Committee of Unsecured Creditors v. R. F. Lafferty & Co.*, 267 F.3d 340, 347 (3d Cir. 2001). A successful claim for deepening insolvency requires a showing of harm to the corporation because of such fraud. *Oakwood Homes*, 340 B.R. at 534 (also explaining that fraud requires a representation of material fact, falsity, scienter, reliance, and injury). In *Oakwood Homes*, fraud was found when the defendants, acting as the debtors' fiduciaries, misrepresented the sustainability of the company's finances with the intent to induce the debtors into maintaining the *status quo*, because it could be inferred from the complaint that such misrepresentation was with knowledge.

Here, as in *Oakwood Homes*, Buckley pled that the defendants, placed in positions of trust and control within DVI, knowingly misrepresented the state of DVI's financial health with the intent to cause DVI to continue incurring more liabilities than it could repay. The defendants

12

allegedly disguised failing accounts and misrepresented DVI's creditworthiness without justification. Rather than constituting a valid attempt to restore DVI to solvency, the defendants' conduct is alleged to have fraudulently expanded DVI's corporate debt and prolonged DVI's life. These allegations, as framed, satisfy the pleading standard observed in *Lafferty*.

      2.      Applicability of *In Pari Delicto* Doctrine

The doctrine of *in pari delicto*[3] provides that "a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in." *Lafferty*, 267 F.3d at 354 (citations omitted). Under this equitable doctrine, when a plaintiff is "standing in the shoes" of the bankrupt corporation, its claim is barred if the defendants' purported wrongdoing is imputed on the bankrupt corporation itself. *Id*. at 354, 358-59.

Whether the *in pari delicto* doctrine applies in this case depends on whether the defendants' conduct can be imputed to the debtors and hence to the Trust, which, under bankruptcy law, stands in the shoes of the debtors. Imputation refers to the attribution of one person's wrongdoing to another person. Under the law of imputation, courts impute the fraud of an officer to a corporation when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation. *Id*. at 358.

The defendants' argue that *in pari delicto* serves as a bar to Buckley's deepening insolvency claim because Buckley stands in the shoes of the debtor corporations, seeking relief from the defendants for damages purportedly caused by the debtors' allegedly fraudulent conduct. (D.I. 29.) To support this argument, Defendants Boyle and Fear state that the allegations buttressing Buckley's deepening insolvency claim satisfy both prongs of the imputation test. In response, Buckley argues that because the *in pari delicto* doctrine is an

---

[3] *In pari delicto* is Latin for "in equal fault." *Black's Law Dictionary* 806 (8th ed. 2004).

affirmative defense, the court should not consider the issue on a motion to dismiss. Further, Buckley contends that if the court reached the merits of whether *in pari delicto* is applicable, the court should find imputation inappropriate because the second prong of the imputation test is not met.

It is generally true that an affirmative defense should not be used to dismiss a plaintiff's complaint under Rule 12(b)(6). *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004). That being said, in *Lafferty*, the Third Circuit did affirm a district court's dismissal of a deepening insolvency claim on the basis of the *in pari delicto* doctrine, which the Circuit acknowledged as an affirmative defense. *Lafferty* and *Adams Golf*, however, are not necessarily in conflict. Indeed, dismissal is only appropriate when the plaintiff can prove *no set of facts* that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added). In this case, Buckley disputes that the criteria for imputation is met. Specifically, Buckley invokes the adverse interest exception, which provides that fraudulent conduct will not be imputed to the corporation if the fraud was not "for the benefit of the corporation." *Lafferty*, 267 F.3d at 359. As Judge Cowen observed in his *Lafferty* dissent, "an equitable doctrine like *in pari delicto* is highly sensitive to the facts and readily adapted to achieve equitable results." *Lafferty*, 267 F.3d at 362. Simply put, the court finds it premature to bar Buckley's deepening insolvency claim on *in pari delicto* grounds. While it may eventually come to pass that the defense will prevail, the determination will be made on further development of the facts. After considering the pleadings and the positions of the parties, the court is not satisfied that Buckley is unable to prove any facts that would entitle the DVI Liquidating Trust to relief for deepening insolvency.

### 3. Applicability of the Business Judgment Rule

In Delaware, there is no general duty to liquidate an insolvent company. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168 (Del. Ch. 2004). Similar to the application of the business judgment rule in the fiduciary duty context discussed earlier, it would be harsh to judge the actions of corporate officers and directors, in hindsight, for a failed good-faith attempt to bring a company out of insolvency. Allegations of bad faith, however, also make recovery for deepening insolvency possible under Delaware law. *In re RSL COM PRIMECALL USA, Inc.*, Nos. 01-11457 through 01-11469, 03-2176, 2003 WL 22989669 at *8 (Bankr. S.D.N.Y. December 11, 2003). If bad faith is alleged, prolongation of operations would "smack of self-dealing, constitute a breach of fiduciary duty, and open up recovery under the theory of deepening insolvency." *In re Global Service Group LLC*, 316 B.R. 451, 465 (Bankr. S.D.N.Y. 2004) (requiring a complaint to allege bad faith or fraudulent intent as opposed to mere bad judgment).

As the court has already concluded, Buckley's complaint makes sufficient allegations of bad faith. Buckley stated that, rather than attempting in good faith to revive DVI and avoid liquidation, the defendants disguised the true nature of DVI's finances to obtain more funding with no expectation that such funding would restore DVI to solvency. (D.I. 1, ¶ 68.) One can reasonably infer that such activities extend beyond the mere exercise of poor judgment, deemed insufficient in *Global Service*. The court finds that, based on the pleadings, the business judgment rule does not preclude a deepening insolvency claim against the defendants.

**D.    Fraud Claim**

To state a claim for fraud, a plaintiff must allege that a defendant made a false statement, knowing or recklessly assuming it to be true, with the intent that plaintiff act or refrain from acting in reliance, that plaintiff justifiably relied, and that plaintiff suffered damages. *Kronenberg v. Katz*, 872 A.2d 568, 585 n.25 (Del. Ch. 2004).  Allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  Provided that a plaintiff alleges sufficiently particularized allegations, there is no *per se* rule that group pleading cannot satisfy Rule 9(b); otherwise, "sophisticated defrauders" could easily conceal their wrongdoing.  *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004).  The Third Circuit has stated that plaintiffs must plead the circumstances of the alleged fraud such that defendants may be placed on notice; although stating the "date, place, and time" clearly fulfills this requirement, plaintiffs may use any alternative method of "injecting precision and some measure of substantiation" into the allegations of fraud.  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

In *Asbestemps, Inc. v. Diversified Energy Group, Inc.*, allegations that defendants represented a corporation as fiscally sound to persuade another company to provide labor were not made verbatim, nor were the time and place identified, but the court found that fraud was properly pled.  No. 87-2623, 1987 WL 16662 (E.D. Pa. Sept. 9, 1987). Plaintiffs need only provide sufficient factual specificity to provide assurance that they have investigated the alleged fraud and reasonably believe that a wrong has occurred.  *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 54 (D. Del. 2002).  For example, even absent allegations with respect to the exact factual context or words, a description of the nature and subject matter of the

representation was found to be enough in *CFTC v. American Metal Exch.*, 693 F. Supp. 168, 190 (D.N.J. 1988)**.**

Buckley sufficiently alleges the elements of fraud: that defendants O'Hanlon, Garfinkel, and Miller knowingly misrepresented DVI's financial situation, with the intent to obtain unjustifiable credit, that DVI and its creditors relied on this misinformation, and that it suffered damages to the extent of bankruptcy. As in *CFTC,* Buckley's complaint describes the nature and subject matter of the alleged fraud by asserting that the three defendants intentionally concealed a number of improper accounting practices, ceased normal account monitoring practices, and diverted millions of dollars from DVI when DVI could least afford it. Although Buckley does not state specific dates and places regarding the allegedly fraudulent actions, as in *Asbestemps*, Buckley sufficiently explained the role each defendant (or in some instances, the three defendants acting together) played in each allegedly fraudulent practice in enough detail to satisfy the "injecting precision" standard enunciated in *Seville*.

## V.   CONCLUSION

Buckley does not have standing to pursue any claims on behalf of the creditors. As such the court will grant the defendants' motions to dismiss to the extent that they seek relief on behalf of the creditors. The court will deny the defendants' motions to dismiss claims brought on behalf of the debtors.

Dated: March 28, 2007                                          /s/ Gregory M. Sleet
                                                                               UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS J. BUCKLEY, AS TRUSTEE OF THE DVI LIQUIDATING TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL A. O'HANLON, STEVEN R. GARFINKEL, RICHARD E. MILLER, JOHN P. BOYLE, ANTHONY J. TUREK, RAYMOND D. FEAR, WILLIAM S. GOLDBERG, GERALD D. COHN, JOHN E. MCHUGH, HARRY T. J. ROBERTS, and NATHAN SHAPIRO,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   C.A. No. 04-955 (GMS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

For the reasons set forth in the court's memorandum issued contemporaneously herewith, IT IS HEREBY ORDERED that:

1. The Defendants' Motions to Dismiss (D.I. 23, 25, 26, 28, 30, 32, 34, and 36) are hereby GRANTED IN PART and DENIED IN PART.

2. The Plaintiff's Motion for Leave to File an Omnibus Brief (D.I. 48) is GRANTED.


Dated: March 28, 2007                         /s/ Gregory M. Sleet
                                                                        UNITED STATES DISTRICT JUDGE